**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**VENISSA SADDLER,**                                                **PLAINTIFF,**

**VS.**                                                **CIVIL ACTION NO. 2:05CV218-P-A**

**QUITMAN COUNTY SCHOOL DISTRICT**
**and VALMADGE TOWNER, in His Individual**
**Capacity,**                                                     **DEFENDANT**

## MEMORANDUM OPINION

This matter comes before the court upon Defendant Quitman County School District's Motion for Summary Judgment on the Merits [95]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

The plaintiff, Venissa Saddler, filed the instant action on October 31, 2005. According to her Amended Complaint, filed on August 15, 2006, the plaintiff seeks actual and punitive damages in addition to reinstatement from the Quitman County School District and Valmadge Turner. The Amended Complaint appears to levy the following claims against the District: (1) substantive due process claim pursuant to the Fourteenth Amendment to the U.S. Constitution; (2) gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment; (3) sexual harassment in violation of Title VII; and (4) retaliation pursuant to Title VII. Against Defendant Valmadge Towner, in his individual capacity, the plaintiff asserts state-law claims of malicious interference and assault and battery.

All of the plaintiff's claims arise from her core allegations that Valmadge Towner, in his capacity as the superintendent of the Quitman County School District, sexually harassed her while

1

she worked as Towner's executive secretary, and ultimately raped her. Saddler also alleges that despite her reports of Towner's sexual harassment individually to two different members of the Quitman County School Board at separate times, the school board did nothing to prevent Towner from sexually harassing her and ultimately raping her. Shortly after Saddler reported Towner's alleged rape, Towner and the school board transferred Saddler from her position as Towner's executive secretary to a nearby elementary school. This transfer did not result in a reduction in pay or benefits, in fact, it included a $1000.00 raise. The reason given for Saddler's transfer was to separate Towner and Saddler while Saddler's charges against Towner were pending. Saddler argues that her transfer was in fact a demotion because she is underutilized, she has to work around children, and she gets a shorter lunch break. Thus, Saddler argues that Towner and the school board retaliated against her for reporting the alleged sexual harassment and rape.

The School District filed the instant motion for summary judgment, arguing that all of the plaintiff's claims against the District fail as a matter of law.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

2

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other

words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Plaintiff's Title VII Claims**

The plaintiff alleges that the District is liable under Title VII for failing to remedy Towner's alleged sexual harassment and for retaliating against her after she reported Towner's behavior by transferring her to a nearby elementary school.

Title VII provides in pertinent part that:

> [T]he term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

42 U.S.C. § 2000e(f).

Thus, Title VII expressly excludes from its protection any person chosen by an elected official to be on that official's personal staff as long as the staffer's job is not subject to the civil service laws of the State. *Rutland v. Pepper*, 404 F.3d 921, 923-24 (5th Cir. 2002). Pursuant to *Davis*

4

*v. Biloxi Public School District*, 937 So.2d 459, 461-62 (Miss. Ct. App. 2005), non-certified workers are not covered by the Mississippi Education Employment Procedures Law and are at-will employees.

The Fifth Circuit's non-exhaustive list of factors for whether a worker is excluded from Title VII coverage as a member of an elected official's personal staff include:

> (1) whether the elected official has plenary powers of appointment and removal,
> (2) whether the person in the position at issue is personally accountable to only that elected official,
> (3) whether the person in the position at issue represents the elected official in the eyes of the public,
> (4) whether the elected official exercises a considerable amount of control over the position,
> (5) the level of the position within the organization's chain of command, and
> (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir. 1985).

In *Rutland v. Pepper*, the Fifth Circuit applied these factors and held that an administrative assistant to an elected Chancery Clerk was not an "employee" within the meaning of the FMLA. Although *Rutland* did not involve Title VII, the statutory definitions of "employee" excluding personal staff members of an elected official are essentially identical. *Compare* 42 U.S.C. § 2000e(f) *and* 29 U.S.C. § 203(e).

With regard to the first *Teneyuca* factor, pursuant to Miss. Code Ann. § 37-9-14(1)(y), Towner as superintendent had the authority to "employ and dismiss noninstructional and nonlicensed employees as provided by law." In any event, it is undisputed that Defendant Valmadge Towner was an elected public official as superintendent of the Quitman County School District, that Towner

created the position of executive secretary specifically for the plaintiff, that she did not interview with anyone other than Towner, and that she did not participate in the application process customary with other employees of the School District.

The other *Teneyuca* factors clearly point to Saddler having been a personal staff member of an elected official given it is undisputed that the plaintiff in her capacity as an executive secretary worked exclusively as an aid to Towner. Saddler was not an executive secretary for the District as a whole, but rather for Towner specifically. This entailed all of the usual duties of a secretary to an executive which, by their nature, concentrate upon the executive for whom that secretary works.

Accordingly, the court concludes that Saddler was not an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f). Therefore, all of her Title VII claims should be dismissed with prejudice.

## C. Fourteenth Amendment Claims

The plaintiff's Amended Complaint and her brief in opposition to the District's motion for summary judgment are not altogether clear as to what claims she is asserting against the District in addition to her Title VII claims. In her Amended Complaint she writes in the introductory paragraph:

> This action is to recover actual and punitive damages for violation of Plaintiff's rights under the Fourteenth Amendment of the United States Constitution and for sex discrimination, sexual harassment and retaliation under the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Additionally, state law claims for malicious interference with employment and assault and battery are alleged.

The Amended Complaint does not clearly delineate elsewhere which claims are asserted and against whom.

In further regard to her claims against the District, the plaintiff writes in the introduction of

6

her response brief:

> Plaintiff, Venissa Saddler, has filed suit against Defendant Quitman County School District alleging arbitrary governmental action in violation of the substantive due process clause of the United States Constitution, Amendment Fourteen, sex discrimination in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution and sexual harassment in violation of Title VII of the Civil Rights Act of 1964.

However, the plaintiff concedes at the end of her response brief that she does not have a valid claim against the School District for a substantive due process violation. Furthermore, though she indicates in her brief and her Amended Complaint that her sexual harassment claim is brought under Title VII, she appears to assert an "equal protection" sexual harassment claim via § 1983 in the body of the response brief.

The court will assume that the plaintiff's remaining claims against the District include (1) gender discrimination in violation of the equal protection clause; and (2) sexual harassment in violation of the equal protection clause.

**1. Equal Protection Gender Discrimination**

The plaintiff asserts that her transfer from her executive secretary position with Defendant Towner to a position at a nearby elementary school constituted a demotion based on her gender. She argues that this transfer constituted gender discrimination in violation of her Fourteenth Amendment right to equal protection of the law.

The Fifth Circuit recognizes the existence of an equal protection gender discrimination claim. *Southard v. Texas Bd. of Criminal Justice*, 14 F.3d 539, 550 (5th Cir. 1997). The *prima facie* test for a gender discrimination claim is the same under Title VII and § 1983. *Wallace v. Texas Tech Univ.*,

80 F.3d 1042, 1047 (5th Cir. 1996). To establish a *prima facie* case of gender discrimination, the plaintiff must show that: (1) she was qualified for the position; (2) she suffered an adverse employment decision; and (3) she was replaced by a male or males who "were treated differently under circumstances nearly identical to [hers]." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).

It is undisputed that Saddler was replaced by a woman when she was transferred. Furthermore, the plaintiff has offered no evidence that any males were ever treated more favorably than the plaintiff with regard to her employment or her transfer. Accordingly, the court concludes that the plaintiff's equal protection gender discrimination claim fails as a matter of law because she cannot meet the *prima facie* case, therefore the claims should be dismissed with prejudice.

**2. Equal protection sexual harassment claim against the School District**

As discussed above, it is not at all clear that the plaintiff in this action is asserting an equal protection sexual harassment claim against the School District. Under the "Equal protection" subheading in her response brief, the plaintiff confines her discussion of legal standards to gender discrimination and not sexual harassment. Furthermore, the introductions quoted above in her Amended Complaint and response brief do not expressly assert an equal protection sexual harassment claim under § 1983. Rather, the language concentrates upon Title VII sexual harassment. As the court concluded above, the plaintiff is not an "employee" under Title VII and therefore cannot recover for a sexual harassment claim premised upon Title VII.

Nevertheless, the court will assume *arguendo* that the plaintiff is in fact asserting a non-Title VII sexual harassment claim premised on the Equal Protection Clause brought via § 1983 against the School District, a claim which was recognized by the Fifth Circuit in *Southard*, 14 F.3d at 550.

42 U.S.C. § 1983 is the exclusive federal damages remedy for the alleged violation of federal constitutional rights by persons acting under color of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 704 (1989). To state a claim under § 1983, the plaintiff must prove (1) one or more of her constitutional rights were violated; (2) the violation was committed by a person acting under color of state law; and (3) "an official policy or custom" of the governmental entity "was a cause in fact" of the violation. *Leffall v. Dallas Independent School Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).

A local governmental entity, such as a school district, cannot be held vicariously liable through *respondeat superior* for constitutional claims. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978). To impose liability on a governmental entity for the acts of a government official, the plaintiff must show that the official who engaged in the alleged constitutional violation possessed "final policymaking authority" to establish a policy or custom regarding the acts at issue. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.").

It is undisputed that Defendant Towner in his official capacity as the superintendent of the Quitman County School District did not have the final policymaking authority to alter the District's policy against sexual harassment. Rather, only the School Board has that authority. Nor is it disputed that the District in fact had a policy against sexual harassment.

The Board may transact official business only through a quorum consisting of a majority of its members and cannot take official action with less than a physical quorum. Miss. Code Ann. § 37-6-7 (requiring a five-member school board) ; *Griffith*, 1995 WL 525713, (Miss.A.G.), August 31, 1995, Opinion No. 95-0575 ("in order for a public body to conduct official acts, a quorum must be

9

physically present, and not present by way of proxy."). Only actions that are duly and properly reflected in the Board's meeting minutes may be considered as official action by the Board because the Board has no authority to take any affirmative action without a vote. *Mabry*, 2001 WL 334193, (Miss.A.G.), March 23, 2001, Opinion No. 2001-0093.

Thus, a quorum in this instance would require three out of the five School Board members to officially act to alter its policy against sexual harassment.

The plaintiff alleges that she informally complained to two board members regarding Towner's alleged sexual harassment: once to Mary Towner, Defendant Towner's mother, approximately three months after the alleged harassment began and once to Irma Bell almost six months after the alleged harassment began. Saddler also alleges that she informally complained to another board member, Nancy Thomas, who is now deceased, regarding the rape on the same day it allegedly occurred.

It is undisputed that the plaintiff never availed herself of the procedures outlined in the Employee Handbook for making a formal complaint of sexual harassment to the board. Nor does the plaintiff dispute that she never made any sexual harassment complaints to a quorum of the board at any one time – *i.e.*, that she spoke to group of at least three board members at the same time regarding her complaints. Nor does Saddler dispute that because a quorum was never formed, there are no minutes evidencing any official action by the board proper altering their policy against sexual harassment.

Thus, even assuming that the plaintiff did in fact complain to two board members of the alleged sexual harassment, individual board members do not have the authority to alter the School District's policy against sexual harassment. Therefore, the plaintiff cannot meet her burden in

demonstrating that "an official policy or custom" of the governmental entity "was a cause in fact" of the alleged constitutional violation. It bears repeating that the plaintiff never made a formal complaint to the board nor did she otherwise follow the established grievance procedures regarding sexual harassment. The plaintiff does not allege that she did not know she could have made a formal complaint to the board or that she never had access to the Employee Handbook which discusses the procedures for filing a grievance.

Accordingly, any equal protection sexual harassment claim asserted via § 1983 against the School District must be dismissed with prejudice.

### III. CONCLUSION

For the reasons discussed above, Defendant Quitman County School District's Motion for Summary Judgment on the Merits [95] should be granted and all of the plaintiff's claims against the Quitman County School District should be dismissed with prejudice. Thus, the plaintiff's state-law claims against Defendant Valmadge Towner, individually, for malicious interference with employment and assault and battery remain. Defendant Towner's counterclaims for malicious prosecution and defamation also remain. However, because the court has dismissed the plaintiff's the federal claims asserted in this action, the court declines to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of August 3, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE